DUGGINS, Plaintiff-Appellee, v. UNITED BROTHERHOOD OF CARPENTERS et al, Defendants-Appellants.

Ohio Appeals, First District, Hamilton County.

No. 7443.   Decided   July 2, 1951.

Norman F. Hoover, for plaintiff-appellee.
Harry N. Routsohn, Dayton, for defendant-appellants.

## OPINION

By HILDEBRANT, PJ.:

This appeal on questions of law is from a judgment of the Common Pleas Court, arrived at without the intervention of a jury, allowing recovery to plaintiff, a widow, of the death benefits provided for in the Constitution of the Brotherhood —defendant—following the death of her husband, a member of Local Union No. 1602, affiliated with the defendant Brotherhood, an unincorporated Association, international in scope.

In recognition of the principle declared by the courts, including this one, that the legal relationship between the membership and the Union is contractual in its nature, plaintiff claims to be entitled, ex contractu, under the death benefit provisions of the Brotherhood Constitution.

Pertinent provisions of that Constitution are:—
"Paragraph C, Section 44, Page 37:

"Each beneficial Local Union shall pay to the General Secretary $5.00 on each new member admitted, excepting apprentices, also One ($1.00) Dollar per month for each member in good standing, Sixty-five (65c) Cents of which shall be used as a fund for the general management of the United Brotherhood and payment of all death and disability donations prescribed by the Constitution and Laws of the United Brotherhood, together with all legal demands made upon the United Brotherhood. The balance of Thirty-five (35c) together with monies received from new members, to be placed in a special fund for 'home for pension purposes.' "

"Paragraph A, Section 45, Page 39:

"A member who owes the Local Union two months dues shall be notified by mail at the last known address by the Financial Secretary during the third month of said delinquency that if said arrearages are not paid before the last day of the third month he will be suspended from benefits of death and disability donation, the right to a pension or admittance to the Home until he squares up entirely all of his indebtedness (including dues for the month in which he squares up his arrearages) and furthermore that he will not be entitled to any benefits during the time of such arrearages or for a three month period from the date of squaring up same. A member in arrears must square up all arrearages in full within one year or stand suspended."

Paragraph B. Section 45, Page 39:

"A member owing a Local Union a sum equal to six months' dues shall have his name stricken from the list of membership without a vote of the Local Union, and shall be so notified at the last known address by the Financial Secretary of the Local Union during the sixth month of his delinquency * * * ."

Paragraph A, Section 48, Page 42:

"On the death of a member in good standing, if married and living with his wife, the claim shall be paid to the widow; * * *"

Paragraph A, Section 49, Page 43:

"A beneficial member to be entitled to donations must be not less than seventeen and not over sixty years of age at the time of admission to membership, and, when he joined, must have been in sound health and not afflicted with any disease or subject to any complaint likely to endanger his health or cause permanent disability."

Paragraph B, Section 49, page 43:

"A beneficial member will be entitled to the donations as prescribed in the Constitution and Laws of the United

Brotherhood; provided, he is over one year a contributing or financial member in good standing, and when three months in arrears he shall be debarred from all donations until three months after all arrearages are paid in full, including the current month."

Paragraph C, Section 49, page 43:

"Donations for journeymen between the ages of twenty-one and fifty years shall be:

| | |
|---|---|
| One years' membership_____ | $100.00 |
| Two years' membership_____ | 200.00 |
| Three years' membership_____ | 300.00 |
| Four years' membership_____ | 400.00 |
| Five years' membership_____ | 600.00 " |

All of the evidence before the Court was adduced by and on behalf of the plaintiff, who is consequently bound thereby. It consists of the testimony of the plaintiff and the financial Secretary of Local 1602, together with certain exhibits, including the Constitution of the Brotherhood and the dues record of plaintiff's decedent from November, 1945, the time of last joining the Union and the last entry of July, 1949, the month in which he died.

The financial Secretary testified in substance that on learning of the illness of plaintiff's decedent, the local Union stepped in as they were wont to do in hardship cases and agreed to advance his dues payments necessary to prevent his being dropped from the Union, in order that he be not required to pay another initiation fee to join again, he to repay such advancements, after, on his anticipated recovery, he returned to work. He testified:

"A. I think this October 9, 1947, was our first payments.

"Q. Yes. When you did that were you paying him up so that he would be, his widow would be entitled to funeral benefits?

"A. No.

"Q. Will you explain that to the court why you say no?

"A. We called on Shevlin Duggins at the hospital and we agreed with Shevlin, inasmuch as he was on his back, to continue his dues payments to keep him a member of the Union, so it was our understanding at that time from the Doctor that was attending him that he would regain his health in a period of one year and be able to go back to work. We were making an effort to keep him a member of the Union so that when he went back to work he wouldn't have to pay another initiation fee.

"Q. You were merely keeping him a member so that he wouldn't be dropped from the membership roll, is that right?

"A. That is right.

"Q. You were not keeping him a member so that he would be entitled to benefits, or his widow would be entitled to funeral donations?  A. No.

"Q. And you understood it that way?   A. Yes.

"Q. Did he understand it that way?

"A. We left him thinking he understood it that way, at least."

The record shows that while the local advanced the dues sufficient to prevent plaintiff's decedent from being dropped from membership in accordance with their agreement, the payments were not made in a manner to keep him eligible at all times for death benefits.  The record further shows that he was kept informed of his status with reference to the payment of dues.

The testimony shows further that in July, 1949, when it became apparent decedent couldn't recover, the local obtained from plaintiff's decedent the following written statement:

"Cincinnati, Ohio, July 4, 1949.

"In consideration of dues paid for me by Carpenters local union No. 1602 as a loan of money therefore paid by me in accordance with the insurance provisions of said local union and for such insurance, and which money has not been repaid by me.

"I hereby give and gave to the said local union a lien upon any benefits payable or which may become payable, to undersigned or to my beneficiaries, for the amount due upon such loan to me or paid by the organization for me upon said insurance.

"Witness my hand this 4th day of July, 1949.

SHELVEN DUGGINS /s/

Witness:                              signature
Mrs. M. Duggins /s/
Mrs. Ray Pyles /s/               Trustees
                                 E. L. HUBER /s/
                                 JOS. FLINGEMAN /s/
                                 HENRY BUSCH, Jr.  /s/"

At that time, anticipating eligibility for death benefits for the first time, the local union advanced the dues necessary to square up plaintiff's decedent within the meaning of the Constitutional provision quoted above.

The financial secretary testified:

"Q. Now, the next payment was paid when?

"A. The next payment was paid June 23, 1949.

"Q. Now, when you paid June 23, 1949, for what months did you pay?  A. Paid for April, May and June.

"Q. So you did pay for the first time the current month?

"A. That is right.

"Q. In June of 1949?  A. That is right.

"Q. And then he became squared up, as you call it, is that correct?  A. That is right.

"Q. For the first time in twelve months?  A. Yes, sir.

"Q. Now, under the Constituton how long would his widow have to wait before she could, how long would he have to live before his widow would be entitled to a funeral donation under the Constitution?  A. Three months.

"Q. Mr. Heimbrock, lets get down to real facts, when you first started to pay his dues for him in October of 1948, you said you had an understanding that all you would do was to keep him from being taken off the rolls, is that right?  A. Yes, sir.

"Q. And he understood it that way and you understood it that way?  A. Yes, sir.

"Q. Were you at that time expecting him to get well?

"A. That is right.

"Q. So that when it came down to June of 1949 and you saw he was not going to get well it was then for the first time that the Local took the action to square him up, is that true?

"A. Yes, I would say yes.

"Q. And it did it purposely so that his widow might be entitled to funeral benefits, is that correct?  A. Yes.

"Q. Had he lived three months after you squared him up then the scheme of the Union would have been fulfilled and she would have been entitled to those benefits after he died, after three months, is that correct?  A. That is correct.

"Q. So that, in other words, you were trying to do something for him and perhaps had a selfish reason for it because you had an investment in it at that time, at least, your Local did?

"A. That is right.

Since plaintiff's evidence shows the dues were squared up on June 23, 1949, and the death occurred on July 23, 1949, only one month later, it is apparent that the three months provision of the Constitution applies and under its terms decedent's estate was not entitled to benefits.

The legality of this provision has been upheld in U. B. of C. & J. v. Smith, 110 Colo. 47, with which this court is in accord.  It would seem to be a complete answer to attack on the legality of that provision to say, that in joining the member agreed to it.

The trial court found that the local union agreed to keep plaintiff's decedent in good standing, which finding is con-

trary to the testimony that they agreed to advance dues sufficient to keep him from being dropped from membership. It is further pointed out that he could be in good standing, but still be out of benefit for a three months period after having acquired good standing by a squaring up of dues. The court further found upon principles of ostensible agency that the defendant Brotherhood was estopped to deny liability for the acts of the local union, and apparently that its conduct amounted to a waiver of the provisions of the Constitution.

It is sufficient to say that the application of those principles are not available to plaintiff under either the pleadings or proof. Even though counsel's opening statement for plaintiff be held sufficient against motion, the motion of defendant for judgment, at the close of plaintiff's case, should have been sustained.

The judgment is, therefore, reversed and final judgment may be entered for defendant.

HILDEBRANT, PJ, MATTHEWS & ROSS, JJ, concur.